2004 UT 85

**John A. FERICKS and C. Kurt Hoffman, Plaintiffs and Appellants,**

v.

**LUCY ANN SOFFE TRUST; Carlos R. Soffe, Vaughn C. Soffe, and Shirla S. Holt, as Trustees of the Lucy Ann Soffe Trust; Pentad Properties, Inc.; Joe Goodman; and John Doe Buyer, Defendants and Appellees.**

No. 20030073.

Supreme Court of Utah.

Oct. 19, 2004.

by the means set forth in that rule.

Russell C. Fericks, Zachary E. Peterson, Salt Lake City, for plaintiffs.

Jeffrey W. Shields, Salt Lake City, for defendants.

DURRANT, Justice:

¶ 1 Plaintiffs, the prospective buyers under a real estate purchase contract, failed to tender a required earnest money payment by the date specified in the contract, whereupon the sellers cancelled the contract. Plaintiffs alleged that oral representations made by the realtors misled them into believing that they had additional time in which to make the required payment. Plaintiffs brought claims for breach of contract against the sellers, as well as tort claims against the realtors for fraudulent misrepresentation, interference with contract, and breach of common law and statutory duties to third parties. After determining that the realtors' alleged oral modification to the contract was unenforceable under the statute of frauds, the district court, on a motion for summary judgment, dismissed plaintiffs' contract claims against the sellers and tort claims against the realtors.

Plaintiffs appeal only the dismissal of their tort claims. We reverse.

## BACKGROUND

¶ 2 "In reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. We state the facts of this case accordingly." *Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 2, 70 P.3d 904 (citation and internal quotations omitted).

¶ 3 On February 1, 2002, the plaintiffs, C. Kurt Hoffman ("Hoffman") and John A. Fericks ("Fericks") (collectively the "Buyers") entered into a Real Estate Purchase Contract ("REPC") for the purchase of property located in Salt Lake County. Under the REPC the Buyers agreed to purchase the property from defendants Lucy Anne Soffe Trust and its trustees (collectively the "Sellers") for $313,000. Defendant Joe Goodman ("Goodman"), an employee of the defendant real estate brokerage Pentad Properties, Inc. ("Pentad"), acted as the Sellers' real estate agent in the transaction. The Buyers tendered an initial $5,000 earnest money payment at the time they entered into the REPC. The REPC required a second, non-refundable $10,000 earnest money payment due on April 6, 2002.

¶ 4 On March 26, 2002, Hoffman contacted Goodman to request a thirty-day extension to the due date for the second earnest money payment. At that time, Goodman represented that he would talk to the Sellers about the extension but that Hoffman should "consider it done," and that Goodman would "take care of preparing the extension." When the Buyers had not received the written extension by April 5, 2002, the day before the second earnest money payment was due, Hoffman again contacted Goodman to inquire about the extension. Goodman apologized for not having obtained the written extension and represented that he would get it done that day. Following this conversation, Goodman failed to notify the Buyers before the payment deadline that the Sellers had chosen not to grant the extension. The Buyers, relying on Goodman's representations that the written extension would be secured,

failed to make the second earnest money payment on April 6, 2002.

¶ 5 On April 8, 2002, Goodman and Pentad (collectively the "Realtors") notified the Buyers that the deadline for the second earnest money agreement had expired and that the Sellers were voiding the REPC. On April 18, 2002, Fericks contacted the Sellers directly to discuss the cancellation. During that conversation, Mr. Soffe, a trustee, informed Fericks that Goodman had never requested an extension on behalf of the Buyers. Additionally, Goodman represented in a phone conversation with Fericks on April 18, 2002, that shortly after the Buyers requested an extension, an alternate buyer made a better offer on the property for a higher price and an earlier closing date. This information led the Buyers to believe that, in order to receive a higher commission, Goodman had intentionally induced them to breach the REPC, thereby voiding their interest in the property.

¶ 6 When the Sellers could not be persuaded to perform under the REPC, the Buyers filed a complaint against the Realtors and the Sellers, alleging six causes of action. The first three causes of action, arising in tort, were claims against the Realtors for (1) breach of common law and statutory standards of care with respect to third parties, (2) intentional interference with contractual and economic interests, and (3) fraudulent misrepresentation. The second three causes of action, arising out of breach of contract, were claims against the Sellers seeking specific performance or damages under the REPC and a declaratory judgment against the alternate buyer of the property.

¶ 7 The Sellers and the Realtors (collectively the "Defendants") made a joint motion for summary judgment. They argued that the oral modification granting an extension of time to tender the second earnest money payment was unenforceable as a matter of law because it had not been reduced to writing as required by the statute of frauds. Due to the unenforceability of the oral modification, the Defendants argued that all causes of action, including the tort claims against the Realtors, should be dismissed with prejudice and on the merits. The dis-

trict court agreed with the Defendants and granted summary judgment on August 19, 2002, dismissing all claims for the "reasons stated on the record" without making independent findings of fact or law.

¶ 8 The Buyers submitted a motion objecting to the dismissal of their tort claims against the Realtors,[1] arguing that the tort causes of action are independent of the contract claims and do not require an enforceable oral modification. The district court disagreed and affirmed the summary judgment dismissal of the tort claims. In so doing, the district court agreed with the Defendants' argument that, because the statute of frauds had rendered the oral modification unenforceable, evidence concerning the oral modification could not be used to support the Buyers' tort claims.

¶ 9 Buyers appeal the district court's dismissal of the three tort causes of action against the Realtors. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2002).

### STANDARD OF REVIEW

■ ¶ 10 Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c). Because summary judgment presents only questions of law, we give no deference to the district court's legal decisions and review them for correctness. *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993).

### ANALYSIS

### I. DISMISSAL OF BUYERS' TORT CLAIMS

■ ¶ 11 The Buyers argue that "[a]fter determining the statute of frauds made the oral modification [to the REPC] unenforceable, the [district] court erred in disposing of the remainder of [the Buyers'] claims which did not implicate the statute of frauds or require enforcement of the oral modification

to succeed." The Buyers contend that the three tort causes of action for fraudulent misrepresentation, breach of common law and statutory duties, and intentional interference with contract arise out of the Realtors' misconduct and not out of the contract. The Buyers assert that, while evidence of the oral modification is relevant to the claims, the modification need not actually be enforceable for the tort claims to survive. "In fact," the Buyers point out, "if the oral agreement had been enforced and the property was sold to [the Buyers], [the Buyers] would have no damages on any of these claims against [the Realtors]."

¶ 12 The Realtors counter that because all of the Buyers' tort causes of action are based in fraud, the oral modification must be enforceable to support the claims. The Realtors rely on language from cases out of this court and the court of appeals stating that "[f]raud, generally, cannot be predicated upon the failure to perform a promise or contract which is unenforceable under the statute of frauds, for the promissor has not, in a legal sense, made a contract; and, therefore, he has the right, both in law and equity, to refuse to perform." *Stangl v. Ernst Home Ctr., Inc.*, 948 P.2d 356, 362 (Utah Ct.App.1997) (citing *McKinnon v. Corp. of Pres. of Church of Jesus Christ of Latter-Day Saints*, 529 P.2d 434, 436 (Utah 1974)). In interpreting this language, the Realtors argue, in essence, that Utah has adopted a per se, categorical rule barring any action in contract or tort when the claim relies on evidence of a contract that is found to be unenforceable under the statute of frauds. The case law cited by the Realtors does not support such an interpretation, however, since those cases involve facts very different from those presented in the case at bar.

¶ 13 In both *McKinnon* and *Stangl*, the plaintiffs, who were parties to oral agreements deemed void under the statute of frauds, sought to enforce the oral agreements against the defendants, who were the other parties to the oral contracts. *McKinnon*, 529 P.2d at 436; *Stangl*, 948 P.2d at

---

1. The Buyers did not challenge summary judgment with respect to the contract claims asserted against the Sellers.

359. The plaintiffs in both cases argued that because they had acted in reliance on the defendants' oral representations, the defendants should be estopped from asserting the statute of frauds as a defense. *McKinnon*, 529 P.2d at 436; *Stangl*, 948 P.2d at 360.

 ¶ 14 In rejecting this assertion in *McKinnon*, we explained that "the doctrine of promissory estoppel ha[s] been extended, in a limited form, to those cases concerned with ... the [s]tatute of [f]rauds, where the promise as to future conduct constitute[s] the intended abandonment of an existing right of the promisor." 529 P.2d at 436; *see also Stangl*, 948 P.2d at 363. It was in this context that we stated that "[f]raud [necessary to establish promissory estoppel], generally, cannot be predicated upon the [mere] failure to perform a promise or contract which is unenforceable under the statute of frauds," as such a rule would virtually eviscerate the effect of the statute. *McKinnon*, 529 P.2d at 436; *see also Stangl*, 948 P.2d at 362. Rather, in order to establish the promissory estoppel exception to the statute of frauds, "[t]he acts and conduct of the promissor must so clearly manifest an intention that he will not assert the statute that to permit him to do so would be to work a fraud upon the other party." *McKinnon*, 529 P.2d at 437; *see also Stangl*, 948 P.2d at 363.

¶ 15 In contrast, the Buyers in the present case do not seek to enforce the oral modification against the Sellers. Rather, the Buyers have brought separate tort claims against the Realtors and argue that the enforceability of the oral modification, and any potential application of the statute of frauds, is irrelevant to the success of those claims.[2]

¶ 16 Although this court has recognized that, in some cases, the statute of frauds can act as a bar to certain causes of action arising in tort, we have not gone so far as to bar all tort claims any time they require evidence of an oral agreement rendered unenforceable by the statute of frauds. We have stated that

the operation of the statute [of frauds] is not confined to cases where an action is brought directly on the contract. Whatever the form of the action may be, if the proof of a promise or contract within the statute is essential to maintain it, there can be no recovery unless the statute is satisfied.... Even an action sounding in tort may be barred by the statute where an essential element of the cause of action is an oral contract within the statute; *but where the oral contract or representation is a mere circumstance or incident of a fraud it may be shown in an action in tort for damages as the statute has no application to such a case.*

*Easton v. Wycoff,* 4 Utah 2d 386, 295 P.2d 332, 336 (1956) (internal quotations omitted) (alteration in original) (emphasis added); *see also Papanikolas v. Sampson,* 73 Utah 404, 274 P. 856, 861 (1929).

¶ 17 In *Papanikolas,* we addressed whether prospective buyers could bring a tort action for fraud and deceit to recover damages they sustained when the prospective sellers failed to perform an oral promise for the sale of land. In that case, it was clear that any contract claim would fail because the oral contract was unenforceable under the statute of frauds. Since the statute of frauds barred recovery under a contract action, the buyers attempted to bypass the statute by asserting a tort cause of action against the prospective sellers for fraud and deceit. The damages claimed by the buyers with respect to their tort claim were equal in amount to the damages they would have pursued under a breach of contract claim. *Papanikolas,* 274 P. at 859–60. Because the claimed tort damages directly coincided with the damages for a breach of contract claim, and because it appeared that any evidence of fraud was dubious at best, we held that the buyers' action was really a claim for breach of contract disguised as a tort claim and was thus barred by the statute of frauds. *Id.* at 861. We explained that a complaining party can-

---

**2.** In an effort to counteract the district court's ruling concerning the enforceability of the oral modification, the Buyers devote a portion of their brief to arguing that the oral modification is, in fact, enforceable under various theories, including promissory estoppel. However, because the Buyers do not seek to enforce the oral modification against the Sellers, we need not reach this issue and therefore decline to address it.

not "set up a promise void under the statute of frauds and base recovery upon rights or damages alleged to have been created by such promises which he would not have except for such agreement." *Id.* at 862.

¶ 18 Thus, in *Papanikolas,* no claims, in contract or in tort, were allowed because there were no actual damages. The only damages claimed by the plaintiffs were due to the defendants' refusal to perform an oral contract that was not legally enforceable. Because the oral contract was not enforceable, no rights were created in the plaintiffs, the loss of which could occasion legally cognizable damages.

■ ¶ 19 *Papanikolas* demonstrates that the statute of frauds does not necessarily bar a tort claim simply because the claim calls for evidence of an oral agreement that is void under the statute of frauds. Rather, the statute only bars those tort claims that require an oral contract as an "essential element" to maintaining the claim. *Id.* at 861; *see also Easton,* 295 P.2d at 336. This is not such a case.

¶ 20 In the present case, the Buyers' tort claims against the Realtors do not rely on any rights created by the purported oral modification. The relevant contract in this case is not an oral one, but is the written REPC, which, prior to its breach, created enforceable rights between the Buyers and the Sellers. If representations made by the third-party Realtors induced the Buyers to breach the REPC, as the Buyers allege, then the Realtors may be liable in tort. We think it is clear that a realtor is capable of making representations, which may or may not be enforceable, that could induce either sellers or buyers to act to their detriment. In this case, the Buyers do not bemoan the loss of artificial rights that never really existed under an unenforceable oral contract; rather, they complain of the rights and benefits lost under the REPC to which they would have been entitled were it not for the Realtors' alleged misconduct. Thus, the oral modification is not an "essential element," as that term is understood in *Papanikolas,* to maintaining the Buyers' tort claims, but is "a mere circumstance or incident of a fraud," which "may be shown in an action in tort for

damages as the statute [of frauds] has no application to such a case." *Papanikolas,* 274 P. at 861; *see also Easton,* 295 P.2d at 336.

¶ 21 Therefore, it was incorrect for the district court to dismiss the Buyers' tort claims on the ground that the oral modification is void under the statute of frauds. The enforceability of the oral modification is not a prerequisite to the success of the tort claims, and summary judgment on those claims was in error. We express no opinion as to whether the Buyers have alleged facts or law sufficient to support the elements of the tort causes of action brought against the Realtors. Additionally, given our disposition, we need not reach the issue of whether the oral modification was, in fact, enforceable by virtue of any of the exceptions to the statute of frauds.

## II. ATTORNEY FEES

■■ ¶ 22 The Buyers also appeal the district court's award of attorney fees to the Realtors. Although our decision today means that the Realtors are now no longer the prevailing party in this action, depending on the district court's resolution of the Buyers' tort claims, this issue may arise again on remand, and we will address it to provide guidance to the district court. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Valcarce v. Fitzgerald,* 961 P.2d 305, 315 (Utah 1998).

■ ¶ 23 As a general rule, attorney fees may be awarded only when they are authorized by statute or contract. *Foote v. Clark,* 962 P.2d 52, 54 (Utah 1998). The Realtors argue that they are entitled to attorney fees based on a provision in the REPC which states that "[i]n any action arising out of this Contract, the prevailing party shall be entitled to costs and reasonable attorney's fees." The Buyers argue that the Realtors are not a party to the REPC and, therefore, cannot recover under this contractual provision. We agree.

■ ¶ 24 We have held that "[o]ne of the most basic principles of contract law is that,

as a general rule, only parties to the contract may enforce the rights and obligations created by the contract." *Wagner v. Clifton*, 2002 UT 109, ¶ 13, 62 P.3d 440. The Realtors argue that, as agents of the Sellers, they have the right to enforce the attorney fee provision. However, an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term for the agent's own benefit. *See Broderick v. McElroy*, 961 P.2d 504, 506–07 (Colo.Ct.App.1997) (holding that a realtor's duties as the seller's agent are independent of the contract and do not make the realtor a party to it); *Super 7 Motel v. Wang*, 16 Cal.App.4th 541, 20 Cal.Rptr.2d 193, 196–97 (1993) (holding that a broker was not a party to a real estate contract and therefore could not recover under the attorney fee provision).

¶ 25 The Realtors also argue that the allegations in the Buyers' complaint have somehow made the Realtors principals to the contract. They contend that if, as the Buyers allege, they have the authority to bind the Sellers by making an oral modification, then surely they are party enough to the contract to also enforce the attorney fee provision. This argument is unpersuasive. Not only have the Realtors misread the Buyers' complaint, but allegations in a complaint generally cannot alter the composition of parties to a contract. Therefore, the Realtors provide no basis for an award of attorney fees.

### CONCLUSION

¶ 26 The district court erred in granting summary judgment with regard to the Buyers' tort claims against the Realtors. The tort claims are independent of the Buyers' contract claims and do not require that the oral modification be enforceable in order to succeed. We therefore reverse and remand to the district court for a determination of the Buyers' tort claims on the merits.

¶ 27 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.